## Baltimore Brick Company *v.* Coyle, Appellant.

*Contracts—Sales—Sale by sample—Bricks.*

When a purchaser defaults after a part of the goods had been delivered the vendor must prove his offer of performance of the contract according to its terms in order to sustain a claim for loss from the breach, but he is entitled to recover for the goods which had been accepted by the purchaser at the rate fixed by the contract without further proof than that the goods were tendered and accepted under the contract.

After the actual reception of the goods and the lapse of a reasonable time to examine them and to ascertain their quality, the buyer will be deemed to have accepted them, unless he then promptly exercises his right to reject them.

Where a person purchases bricks by sample, and receives and retains for several months two carloads without objection, and urges the delivery of a third carload, he cannot after the arrival of the third carload refuse to accept it, and refuse to pay for the other two carloads, because the color

of the bricks, although uniform in the three shipments differed from the color of the sample exhibited at the time of the making of the contract.

Argued May 10, 1901.   Appeal, No. 175, April T., 1901, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 431, on verdict for plaintiff in case of Baltimore Brick Company v. Reed B. Coyle.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Assumpsit for breach of contract of sale.   Before COLLIER, J.

At the trial it appeared that the defendant had accepted and retained for several months two carloads of bricks aggregating 18,000 in number.   He refused to accept the third carload of 5,000 bricks, on the ground that the color of the bricks in the three carloads did not conform to the sample brick.   The total number of bricks ordered was 23,000.

The court charged in part as follows :

This case, as you understand pretty well, turns on a question of fact; there is a dispute between these two parties.   [The plaintiff has furnished the brick claimed here, and it is in the possession of Mr. Coyle.   He has it and he refuses to pay for it.] [1]   [Mr. Coyle, in his statement or affidavit, says that the brick were sold by sample, and were all to conform regularly to the said sample, in make, quality and color.   He says they did not correspond in that way, and when he found it out he gave notice to the agent, Mr. Freeman, that he would not receive them and to take them away.   That is the only question in the case, there being no guarantee.] [2]

[When a man guarantees that a thing shall be exactly so, it has to be exactly so.   If it is not exactly so you may repudiate the contract and sue for your money back, if you have paid any, or you may stand on your contract and defend as to the damages, but that is not so in a sale by sample.   In a sale by sample, where it is to be like the sample, it means substantially like it.   It does not mean every brick to be a perfect specimen of the sample.] [3]   That is not only the law, but every business man knows it is the custom and practice.

[The defendant is liable to pay this bill just as it is charged, because he got the brick, unless he has satisfied you that his statement is correct.   You will determine that from the evi-

dence, of which you are the sole judges. Now, were these brick when they were delivered at East Liberty, when they came there in the cars, substantially a compliance with the contract? There is a little dispute about the brick. One says one brick is number 400 and something, and the sale was by another. You will determine that; but the defendant must satisfy you that his theory is right, that the sample he says was the one it was sold by, and that they did not conform substantially to that sample in color, size, or in any other way substantially.] [4]

Now, as to that, you heard the testimony of the defendant, Mr. Coyle, and his witnesses, and you heard the testimony of the plaintiff. The plaintiff says that they were, and he gives you some evidence for you to determine that; that they were delivered in good condition, substantially, and pretty nice brick, too, and that if they were discolored in any way seriously, it was not the fault of the company, but was the fault of the defendant in leaving them exposed and not attending to them.

When they were delivered, were they a fair sample? If you find from the evidence that they were not, from the weight of the evidence, and that Mr. Coyle gave him notice to take them away, that he would not receive them, then the plaintiff cannot recover anything; [but if the brick substantially complied with the sample that was given there that day, and were delivered in reasonably fair, good condition, then the defendant ought to pay for them because he got them.] [5] If that was not so, and he gave notice to take them away, and they would not take them away, then he is not liable to pay for them at all.

Verdict and judgment for plaintiff for $530.50. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*S. S. Mehard,* for appellant.—The learned court below erred in the instructions given the jury on the subject of warranty: Parker v. Palmer, 4 B. & Ald. 387 ; Benjamin on Sales, 648.

The learned court erred in the instructions given the jury as to the measure of proof required of the defendant: Hartupee v. City of Pittsburg, 97 Pa. 109.

The learned court erred in saying that the brick were in the

possession of Mr. Coyle.   The testimony, even on behalf of the plaintiff, showed that only two carloads of the brick shipped were unloaded by Mr. Coyle's employees, and that the third carload was refused before it was unloaded.

*Albert York Smith*, for appellee.

OPINION BY W. D. PORTER, J., July 25, 1901:

The contract out of which this litigation arose was a sale of building bricks by sample.   The Act of April 13, 1887, P. L. 21, requires us to read into such a contract " an implied warranty on the part of the seller that the goods, chattels and property sold and to be delivered are the same in quality as the sample shown."   The plaintiff company through an agent entered into a contract for the sale and delivery of 23,000 bricks at $30.00 per thousand, free on board cars at East Liberty. The bricks were shipped from Baltimore in three consignments. The first car contained 8,000 bricks, was shipped May 21, 1900, and the bricks were received by the defendant and by him and his employees hauled to a building operation on Squirrel Hill, a long distance from East Liberty station.   The defendant piled the bricks upon his ground, placing straw between the courses to protect the edges, and left them exposed to the weather without any covering for two months.   The second carload, composed of 10,000 bricks, was shipped July 10, promptly reached its destination and the goods were received by the defendant who treated them just as he had the preceding shipment.   The third carload of 5,000 bricks was shipped July 21, and when this consignment arrived at East Liberty the defendant declined to receive the bricks.   The defendant then notified plaintiff's agent that he not only rejected the 5,000 bricks upon the car at East Liberty, but that he also refused to accept the 18,000 bricks which were then lying upon his land at the top of Squirrel Hill, and 8,000 of which had been in his possession for two months.   He at the same time rescinded his agreement to buy these bricks.

The defendant having refused to proceed further under the contract, a right of action at once accrued to the plaintiff company; they were not bound to make tender of further performance: Campbell v. Gates, 10 Pa. 483; Lentz v. Choteau, 42 Pa.

435. If the plaintiff had partly performed the contract and complete performance had been prevented by the defendant, plaintiff was entitled to recover for the part performed, and also damages for the loss suffered because of the defendant's breach of the contract. When an action is brought for breach of a contract of sale which remains wholly executory, and the plaintiff seeks to recover damages resulting from the failure of the defendant to comply with his contract to purchase, the burden is upon the plaintiff to show an offer of performance upon his part, and tender of such goods as the contract required; or that such tender has been waived. He must also prove that he has sustained an actual loss of profits or property. When the purchaser defaults after a part of the goods have been delivered the vendor must still prove his offer of performance of the contract according to its terms, in order to sustain a claim for loss from the breach, but he is entitled to recover for the goods which had been accepted by the defendant at the rate fixed by the contract, without further proof than that the goods were tendered and accepted under the contract: Carmalt v. Platt, 7 Watts, 318; Lentz v. Choteau, supra.

The objection of the defendant to the bricks delivered under this contract was that they varied from the color of the sample exhibited at the time of the contract. He testified that the bricks delivered were not uniform in color, and that this objection applied equally to each one of the three consignments. All the bricks in the three carloads were of the same class, and the variation in color was no greater in the second and third than in the first shipment. If the goods tendered under the contract were not the same in quality as the sample, and if the variance was material, it was apparent upon the first view, not latent and requiring time for detection. When the defendant received these goods their color was openly visible, there was a full opportunity to inspect and it was his duty, then and there to pass upon any question involving their quality which was clearly apparent. "After the actual reception of the goods, and the lapse of a reasonable time to examine them and to ascertain their quality, the buyer will be deemed to have accepted them, unless he then promptly exercises his right to reject them. This right must be exercised not only promptly but unequivocally . . . as soon as goods are accepted, the title passes to

the buyer, and if there was no fraud or deceit in the sale, he cannot thereafter, revest title in the seller without the latter's consent. It follows that after full acceptance, especially if it be under circumstances from which a waiver of strict performance on the part of the seller, may be found, the buyer is not at liberty when sued for the price, to avoid the contract in toto:" Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224; Morse v. Arnfield, 15 Pa. Superior Ct. 140. The defendant knew that the plaintiff company was shipping these bricks from Baltimore at heavy expense, for he had paid the freight bills on the first and second cars, and in his affidavit the defendant claims credit on the account for the amount thereof, which was allowed. With this knowledge and having two carloads of the bricks in his possession, he urged the agent of the defendant to hasten the shipment of the other car. When that car arrived he refused to accept it because of the color of the bricks, which he admits was the same as that of the preceding shipments. He had not suggested that the color of the bricks was unsatisfactory, and he so acted as to justify the plaintiff in believing that he was perfectly satisfied with their goods. The bricks in the third car were to be used in connection with those of the first and second and the plaintiffs naturally loaded it with bricks of the same quality. When the defendant rejected the car the goods were subject to freight charges amounting to $43.00, and the plaintiffs had left on their hands a broken lot of goods in a market distant from their manufactory. Even if the goods shipped were not of the exact color of the sample, the defendant by his course of dealing under the contract gave reasonable ground for belief that he had waived his right to insist upon the identical shade of color and he must be held to be estopped to insist upon strict compliance: Waters v. Wolf, 2 Pa. Superior Ct. 200; Germain Fruit Co. v. Roberts & Co., 8 Pa. Superior Ct. 500. The defendant having accepted the first two carloads of bricks, there being no evidence of fraud or deception, his power to rescind the contract was to that extent at an end.

A slip of memory as to the testimony led the learned judge of the court below into an error as to the facts. He assumed that all the bricks had been received by the defendant; had the fact been so, his instruction as to the law was correct. But

the defendant had declined to accept the bricks contained in the third car and they never came into his possession.  If the plaintiff was entitled to recover on account of that shipment, the measure of damages would be the loss which it sustained because of the breach of the contract, and not the value of the goods: 3 P. & L. Digest of Dec. 4596.  The fourth specification of error is sustained, but the others are without merit.

The judgment is reversed and a venire facias de novo is awarded.